**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **THOMAS KOVACH, ET AL.,** ) | **CASE NO.1:07-2584** |
| ) | |
| **Plaintiff,** ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| **vs.** ) | |
| ) | |
| **ZURICH AMERICAN INSURANCE** ) | **OPINION AND ORDER** |
| **CO.,** ) | |
| ) | |
| **Defendant.** ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on cross motions for judgment on the Administrative Record. (ECF #31). For the following reasons, the Court grants Defendant's Motion and denies Plaintiffs.

Plaintiffs Thomas and Rebecca Kovach allege that Rebecca is a participant in the Keycorp Group Term Life Insurance and Accidental Death and Dismemberment Plan ("Plan") as an employee of KeyCorp. Thomas, her husband, is a named beneficiary under the Plan. On November 7, 2005, Thomas sustained serious injuries as a result of a motor vehicle collision in which Thomas, while riding a motorcycle, collided with a car. As a result of the accident, Thomas' left leg was amputated below the knee. The Plaintiffs' contend the Plan was in effect at the time of the accident and they made a timely application for benefits.

Upon the receipt of the application, Zurich began an investigation into the matter and on March 29, 2006, denied coverage because it determined Thomas' injuries were not the result of an accident and were "self-inflicted" based on a toxicology report showing Thomas' blood

1

alcohol level was elevated at the time of the accident and the presence in his blood of opiates and benzodiazepine. On September 20, 2006, Zurich rejected Plaintiffs' appeal.  Plaintiffs allege they have exhausted all administrative appeals.

## LAW AND ANALYSIS

### Standard of Review

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).  If such discretionary authority is given, the arbitrary and capricious standard is appropriate. *Morrison v. Marsh & McLennan Cos., Inc.,* 439 F.3d 295, 300 (6th Cir. 2006).  'The arbitrary and capricious standard is the least demanding form of judicial review." *Admin. Comm. of the Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson,* 164 F.3d 981, 989 (6th Cir.1999).  Under the arbitrary and capricious standard of review the administrators decision will be upheld if it is "rational in light of the plan's provisions." *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir. 1997).   Where the entity that administers the an ERISA plan, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket, a conflict of interest is created, and a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits, with the significance of the factor depending upon the circumstances of the particular case. *Metropolitan Life Insurance Co., et al., v. Glenn,* 128 S. Ct. 2343 (2008).

### The Discretionary Authority Conferred on Defendant Under the Plan

The parties do not dispute the express language of the Plan confers discretionary authority to Zurich "to determine eligibility for benefits and to construe the terms of the plan." (AR 547). Typically, such discretion warrants review under the arbitrary and capricious standard. However, Plaintiffs contend Zurich improperly delegated its fiduciary duties under the plan to third parties. As a result, Plaintiffs contend the proper standard of review is *de novo*.

Plaintiffs contend Defendant improperly retained "CS Claims Group, Inc. to investigate Plaintiffs' claims by obtaining hospital and physician records and any accident reports." Plaintiffs further contend Defendant improperly delegated its fiduciary duties to construe and determine benefits under the Plan to an outside attorney, Dan Mcguire who "was retained to interpret the language of the AD & D policy." Plaintiff also contend Defendant then "regurgitated" Mr. Maguire's opinion, word for word, in its denial of benefits. Finally, Plaintiffs contend Defendant delegated the determination authority in its appeal process to an outside entity named the ERISA Review Committee. Plaintiffs argue the unauthorized ERISA Review Committee affirmed the denial of Plaintiffs' benefit claim based, in part, on the underlying review in contravention of the Plan which states, "no deference will be afforded the initial determination." (Ex. B attached to Plaintiffs' Complaint).[1]

The Court finds the record does not support Plaintiffs' contention that improper delegation occurred. First, the record demonstrates both Plaintiffs' initial denial and subsequent denial on review were made by Zurich employees and the denial letters were sent on Zurich letterhead on behalf of Defendant. (AR 57-60), (AR 211-212).

---

[1] This language is not found in the Keycorp Plan documents contained in the administrative record. Rather, it is in the Plan document attached to Plaintiffs Complaint. It is unclear whether such language was properly before the Plan Administrator. (See AR 191-206) and (AR 230-245).

3

CS Claims Group, Inc. collected the police report, medical, driving and court records. There is no evidence in the record suggesting CS Claims Group, Inc. did anything more than collect and provide those records to Defendant.  Plaintiff is correct that a court will review *de novo* the denial of benefits under an ERISA plan when an unauthorized party renders the decision. *Sanford v. Harvard Industries, Inc.,* 262 F.3d 590, 596 (6th Cir. 2001).  However, the record does not support a finding that CS Claims Group, Inc. was involved in the decision to deny benefits.  There is nothing in the administrative record that supports Plaintiffs' contention that CS Claims Group, Inc., performed a discretionary function reserved exclusively for the Plan administrator.  Nor have Plaintiffs pointed the Court to any case law finding such services are an improper delegation of fiduciary duty.  In fact, 29 U.S.C. §1002 (21)(A) describes the duties of a fiduciary as follows:

> (21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

Because the acts of CS Claims Group, Inc. do not fall within those fiduciary acts described above, the Court finds Zurich did not improperly delegate.

The same analysis applies to the actions of Defendant in seeking the advice of outside counsel in interpreting the Plan provisions.  Again, the denial of Plaintiffs' claim was written on Zurich letterhead and signed by a Zurich employee.  The administrative record indicates when Zurich referred the case to outside counsel for review it stated in pertinent part, "...please find

4

copy of file for your review and ***if in agreement***, the drafting of the denial based on policy provisions." (Emphasis added). (AR 263).  The record therefore, indicates that Defendant had already reached its conclusion independent of outside counsel's conclusions.  Furthermore, the Sixth Circuit has cited favorably an Eighth Circuit Court of Appeals case that found the securing of independent legal advice by a fiduciary was evidence of a thorough investigation.  *Chao v. Hall Holding Co.,* 285 F.3d 415, 430 (6th Cir. 2002) citing *Martin v. Feilen,* 965 F.2d 660, 670-71(8th Cir. 1992).  The administrative record demonstrates Defendant made the decision to deny benefits. Outside counsel's letter is couched in terms of an opinion letter and recognizes it is the decision of the Plan Administrator to determine coverage.  "As a result, I believe that the Company may reasonably conclude based on the evidence in the administrative record, that Mr. Kovach's injury was not the result of an accident under the policy..." (AR 433).  "It is my opinion that the facts support application of the self-inflicted injury exclusion..." (AR 434).  The Court finds Defendant did not delegate its duties under the Plan to outside counsel.

Finally, the administrative record does not support Plaintiffs' contention that the ERISA Review Committee is a separate entity rendering decisions under the Plan.  The denial letter dated September 20, 2006, was from Keith Firestone, a member of the ERISA Review Committee.  The letter clearly indicates in its address block that the ERISA Review Committee is a Zurich American Insurance Company entity.  Nothing in the administrative record demonstrates the ERISA Review Committee is anything other than a division or working group of Zurich American Insurance Co.  Therefore, the Court finds Plaintiffs cannot demonstrate that a non-party acted in a fiduciary capacity nor that Zurich American Insurance Co. delegated its fiduciary duties to non-parties.  As a result, the Court finds the proper standard of review for

5

Plaintiffs claims is the arbitrary and capricious standard and proceeds to the merits of Plaintiffs claims accordingly.

## **Basis for Denial of Benefits**

Plaintiffs contend Defendant's denial of benefits under the Plan was arbitrary and capricious. The parties do not contest the policy was in place and was current at the time of Thomas' injuries nor do they contest Thomas was an additional insured under the Plan.. The policy defines "injury" under the Plan as "bodily injury directly caused by accidental means which is independent of all other causes, results from a Hazard, and occurs while the Covered Person is insured under this Policy." (AR 519). The policy provides compensation for Accidental Death and Dismemberment ("AD&D") which covers loss of life, severed limbs and loss of entire sight as the result of a covered accident. (AR 191). The Policy excludes payment for injuries under the AD&D "caused by, contributed to or resulted from: Suicide, attempted suicide, or purposeful self-inflicted wound." (AR 196).

Defendant denied coverage for Thomas because its investigation revealed Thomas was intoxicated and possibly under the influence of drugs at the time he was operating the motorcycle. Also, the police investigation determined Thomas had run a stop sign and was responsible for the accident and further indicates Thomas was cited for a stop sign violation. (AR 457). In interpreting the policy provisions, Defendant determined Thomas' injuries were not the result of an "accident" but instead were a "reasonably foreseeable consequence of driving while highly intoxicated and under the influence of drugs." (AR 58). Furthermore, Defendant determined Thomas' injuries were self-inflicted due to his intentional ingestion of alcohol and drugs before operating the motorcycle and, therefore, his injuries were excluded from coverage.

6

*Id.*

Plaintiffs contend Defendant's denial was arbitrary and capricious because: 1) the policy does not specifically exclude coverage for driving while intoxicated; 2) under the applicable test for whether an injury is the result of an accident, the Defendant failed to consider the first prong which looks to the intent of the injured party; 3) Defendant never expressly determined Thomas' intoxication was the cause of the accident; 4) Defendant never alleged Thomas was impaired at the time of the collision; 5) Thomas was administered drugs by health care professionals; 6) Defendant used interchangeably two different legal principles; 6) intoxication does not render an accident substantially certain or highly likely to occur; 7) an injury that results from a collision, while the covered person is under the influence of alcohol, must be an accident because the policy expressly excludes coverage for alcohol use in other sections and such specific exclusion would be redundant if it would not be an accident under the policy definitions; and, 8) because the injury was not intended the purposeful self-inflicted injury exclusion cannot apply where the behavior is merely risky.

After considering Plaintiffs' arguments, the Court finds Defendant's denial of benefits was not arbitrary or capricious. It is undisputed Thomas' blood alcohol level exceeded the legal limit in Ohio at the time of the collision. The administrative record reflects Thomas was initially taken to Robinson Hospital in Ravenna, Ohio. There, an outside laboratory blood test placed Thomas' blood alcohol level at 0.148%, almost twice the legal limit under Ohio law. Ohio Revised Code Section 4511.19(A)(1) (establishing legal limit as 0.08%). Five hours after Thomas had been life-flighted to MetroHealth Medical Center in Cleveland, Ohio, his blood alcohol level was tested again and found to be .085%, still over the legal limit. (AR 281).

7

MetroHealth's blood test also revealed the presence of opiates and benzodiazepenes.(AR 281,333). Finally, the police officer investigating the crash determined Plaintiff had failed to stop at a stop sign causing the collision. (AR 457).

Defendant opines that Thomas' injuries were not accidental in light of his operating motor vehicle while under the influence of alcohol and possibly drugs. (It is not clear if the opiates and benzodiazepene found in Thomas' blood were the result of his medicating prior to operating the vehicle or if they were administered by medical staff after his injuries.) Defendant cited the following cases within the Sixth Circuit that supported such a conclusion. *Jones v. Metro. Life Ins.*, 385 F.3d 654 (6th Cir. 2004); *Nelson v. Sun Life Assurance Co. of Canada*, 962 F.Supp.1010, 1012-13 (W.D. Mich. 1997); *Walker v. Metro. Life Ins. Co.*, 24 F.Supp.2d 775, 780-81 (E.D. Mich. 1997); *Miller v. Auto-Alliance Int'l, Inc.*, 953 F.Supp. 172, 175-77 (E.D. Mich.1997); *Cates v. Metro. Life Ins. Co.*, 14 F.Supp.2d 1024, 1027 (E.D. Tenn. 1996), *aff'd,* 149 F.3d1182 (Table) (6th Cir. 1998); *Fowler v. Metro. Life Ins. Co.*, 938 F.Supp. 476, 480 (W.D. Tenn.1996).

The Court must analyze the actions of the administrator in light of the arbitrary and capricious standard of review, which is the least demanding form of judicial review. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Co. Ret. Plan,* 887 F.2d 689, 693 (6th Cir.1989). Also, the Sixth Circuit has held district courts "must accept the administrator's rational interpretation of the plan even in the face of an equally rational interpretation offered by the participants." *Gismondi v. United Tech. Corp.,* 408 F.3d 295, 298 (6th Cir. 2005). Based on the evidence presented to Defendant and, in light of relevant case law, the Court finds

8

Defendant's interpretation was rational and its decision to deny benefits was not arbitrary and capricious. Furthermore, when a Plan grants discretion to the Plan Administrator to interpret the Plan the Court must give great leeway to the Administrator's interpretation of ambiguous and general terms. *Jones v. Metropolitan Life Ins. Co.* 385 F.3d 654, 661 (6th Cir. 2004).

The Plan does not define the term "accident" or "accidental.". The Defendant properly looked to federal common law to define the term. Citing *Jones,* Defendant determined "[u]nder applicable law, an injury is accidental if it is neither subjectively expected nor objectively forseeable." (AR 58). Because Defendant could find ample legal support for its conclusion that injuries suffered as a result of driving under the influence of alcohol are not accidental, this Court must find its decision was not arbitrary and capricious. In *Lennon v. Metropolitan Life Ins Co.,* 504 F.3d 617 (6th Cir. 2007), the Sixth Circuit addressed this nearly identical issue. The Court determined, after a thorough discussion of applicable case law, "interpreting the result of reckless drunk driving as not "accidental" for the driver is not arbitrary." *Id.* at 624. In *Lennon*, the Sixth Circuit cited favorably the case of *Eckelberry v. Reliastar Life Insurance Co.,* 469 F.3d 340 (4th Cir. 2006), wherein the Fourth Circuit held "federal courts have found with near universal accord that alcohol-related injuries and deaths are not accidental under insurance contracts governed by ERISA." *Lennon* at 622.

Plaintiffs' arguments do not support a reversal of Defendant's decision. First, though the policy does not specifically exclude coverage for driving while intoxicated, the policy does exclude non-accidental injuries. Though the Plan does not define "accident" or "accidental", Defendant properly looked to federal common law to define the term. There is some question as to what is the federal common law definition of "accident"- i.e. whether "injury is highly likely

9

to occur as a result of the insured's intentional conduct;" *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1088 (1st Cir. 1990), or whether the injury was "reasonably forseeable" as espoused by the district court decisions cited by Defendant in its denial of benefits. The Court finds it was not arbitrary and capricious for Defendant to rely on decisions within the Sixth Circuit applying a reasonably forseeable test.[2]

Plaintiffs contend Defendant did not find Thomas was impaired at the time of the collision. However, under Ohio law there is a presumption that a driver whose blood alcohol level exceeds the legal limit is impaired when operating a motor vehicle. "The legislature, on the basis of extensive research into the problem of drunken drivers, has determined and statutorily established that a blood alcohol level of .10 percent has an adverse effect on an individual's coordination and control and that an individual with that blood alcohol level is incapable of safely operating a motor vehicle." *Phelps v. Positive Action Tool Co.,* 26 Ohio St.3d 142, 145 (1986). At the time of Thomas' injury, Ohio law had been modified to prohibit the operation of a motor vehicle when the operator's blood alcohol level exceeds .08%. Therefore, the Court finds the Defendant's denial of benefits was not arbitrary and capricious as it was reasonably

---

[2] In *Lennon,* Judge Boggs, concurring in judgment, wrote, "[h]owever, a number of courts-in particular, several district courts in this circuit-finding *Wickman* persuasive and purporting to apply it, have (intentionally or not) modified its objective standard from one of "high likelihood" to "reasonable foreseeability," and have concluded that a collision by a highly intoxicated driver (including a driver with a blood alcohol level comparable to, and even considerably lower than, Lennon's), being reasonably foreseeable, is not an accident." *Lennon* at 625. Judge Boggs went on to say, "If the administrator's decision here were subject to the district court's *de novo* review, its rejection of these cases in favor of the stricter standard advanced in *Wickman* (or some other standard entirely) might have been appropriate. But when it reviews under an arbitrary and capricious standard, the district court cannot simply substitute its judgment for that of the administrator." *Id.* Judge Boggs also noted *Wickman* is not binding precedent in this circuit and so any departure from its highly likely to occur standard is not a sufficient basis in and of itself to warrant reversal of those district court opinions that used the reasonably forseeable standard.

forseeable that operating a motor vehicle with a blood alcohol level of nearly twice the legal limit  was not accidental.  The Defendant's decision relied on relevant Sixth Circuit case law and undisputed facts.  As district courts in the Sixth Circuit have used the reasonably forseeable test when defining "accident" it was not arbitrary and capricious for the Plan Administrator to adopt such a standard.

Because the Court finds Defendant's determination that Thomas' injuries were not as a result of an accident under the terms of the Plan dispositive of Plaintiffs' claim, the Court need not address the self-inflicted argument.

The Court also finds Plaintiffs' contention that Defendant failed to administer the Plan in accordance with Plan documents and procedures lacks support in the administrative record. Plaintiffs primarily contend it was Defendant's improper delegation of fiduciary duties that contraves the Plan procedural requirements.  In addition, Plaintiffs contend the review committee based its decision upholding denial of benefits at least in part on the original denial letter which is expressly disavowed in the Plan. Also, Plaintiffs contend an email from Keycorp to Zurich inquiring about Zurich's denial of six separate claims demonstrates a pattern and practice of arbitrary and capricious denials. Finally, Plaintiffs contend Defendant delayed its review nearly two months longer than the Plan allows.

First, the Court finds Plaintiff failed to raise these issues during the claims process before the Defendant and failed to raise them in its Complaint.  Furthermore, this Court has already determined no improper delegation occurred.  Also, the evidence does not demonstrate the ERISA Review Committee improperly based its decision on the original denial letter.  Though the Plan states "no deference will be afforded the initial determination," the Review Committee's

11

denial letter merely states, "based upon the Committee's review of the administrative record including but not limited to the police report and the denial letter dated March 29, 2006 and the applicable case law authority, the Committee affirmed the denial." (AR 212).  Nothing supports Plaintiffs' contention that the Review Committee gave deference to the original denial letter.  Rather, it merely indicates the review Committee reviewed the original denial letter as part of the administrative record.  Again, the Court notes the "no deference" language is not found in the Plan documents found in the administrative record but was contained in Ex. B to the Complaint.  Therefore, the Court cannot even say such language was before the Defendant in its administrative review.  Regardless, the record does not support Plaintiffs' contention that Defendant improperly deferred to the initial denial letter.

Plaintiffs cite to an email from a Keycorp representative to Defendant inquiring as to the status of six claims, whether they were denied and if so, on what basis.  Because it is unknown whether those claims were denied, the email does not support an inference that Defendant arbitrarily and capriciously denies benefits.

Finally, the record supports Defendant's contention that the delay in issuing a determination on appeal was triggered by Plaintiffs' supplemental evidence in the form of an affidavit, contesting fault in the collision.  The Review Committee pended its decision on further investigating who was at fault in the collision.  A subsequent police report indicating Thomas was cited for failure to stop at a stop sign supported the Committee's determination that Thomas Kovach was at fault.

Lastly, Plaintiff, in a footnote at pg. 19 of their Brief on the Administrative Record, points out Defendant has the discretion to administer benefits and is the entity that pays the

12

benefits, which is a factor for courts to consider in light of the conflict of interest it creates. However, Plaintiffs do not develop the argument nor do they point this Court to any evidence in the record warranting a finding that the inherent conflict of interest directed or influenced Defendant's denial of benefits.  Rather, the record supports the denial of benefits was based entirely on Thomas' elevated blood alcohol levels, positive drug test and the fault apportioned Thomas by the investigating police officer for failure to stop at a stop sign.  Thus, the Court does not find evidence in the record warranting a determination that the denial of benefits was arbitrary and capricious due to a conflict of interest.

Therefore, for the foregoing reasons, the Court finds the Defendant's denial of benefits was not arbitrary or capricious and the Court grants judgment for Defendant on the administrative record and denies Plaintiffs' motion.

IT IS SO ORDERED.


 S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

September 30, 2008